FILED
OCT - 7 2015
CLERK, US DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 2:15cr 126 |
| | ) | |
| v. | ) | 18 U.S.C. § 542 |
| | ) | Entry of Goods by Means of False Statements |
| LUMBER LIQUIDATORS, INC., | ) | (Count 1) |
| | ) | |
| | ) | 16 U.S.C. §§ 3372(a)(1), 3372(f)(1), 3373(d)(2) |
| Defendant. | ) | Transport of Illegally Imported Timber |
| | ) | (Lacey Act) |
| | ) | (Counts 2-3, 5) |
| | ) | |
| | ) | 16 U.S.C. §§ 3372(a)(2)(B)(IV), 3373(d)(2) |
| | ) | Import of Illegally Harvested Timber |
| | ) | (Lacey Act) |
| | ) | (Count 4) |
| | ) | |
| | ) | 18 U.S.C. §§ 981(a)(2)(A), 982(a)(2)(B) and |
| | ) | 28 U.S.C. § 2461(c) |
| | ) | Forfeiture Allegation |

## CRIMINAL INFORMATION

THE UNITED STATES CHARGES THAT:

At all times material to this Criminal Information, and incorporated by reference in all counts:

1. The defendant, Lumber Liquidators, Inc., was a business incorporated under the laws of Delaware and headquartered in Toano, Virginia.

2. Lumber Liquidators, Inc., owned and operated with and through two direct subsidiaries: Lumber Liquidators Services, LLC, and Lumber Liquidators Leasing, LLC. Lumber Liquidators Leasing, LLC, contained a Chinese representative office in Shanghai, China, which was sometimes referred to as the "RO." The RO was managed and directly controlled by Lumber

Liquidators Services, LLC, which operated the RO as a satellite office and paid Lumber Liquidators Leasing, LLC, for operation of the RO.

3. Lumber Liquidators Inc., together with its direct and indirect subsidiaries ("LL"), was the largest specialty retailer of wood flooring in North America. A significant portion of LL's business was the importation of wood flooring from mills and manufacturers located outside of the United States. The majority of LL's suppliers were located in China, where the flooring was manufactured. The timber used in the manufacturing, however, was often harvested in other countries and shipped to China. Some of the timber in flooring purchased by LL was harvested in Far East Russia and Myanmar.

4. Timber from Far East Russia was considered, within the flooring industry and within LL, as having a high risk of being illegally sourced due to corruption and illegal harvesting in the remote region. Of particular concern was the illegal cutting of Mongolian oak (*Quercus mongolica*) in the temperate broadleaf forests of Far East Russia, because those forests are home to the last wild Siberian tigers (*Panthera tigris altaica*), of which the remaining population is estimated to be less than 450. The primary contributors to the tigers' risk of extinction are illegal logging and detrimental logging practices. The risk stems from the fact that the tigers are dependent on intact forests for hunting and because Mongolian oak acorns are a primary food source for the tigers' prey species, such as red deer, roe deer, and wild boar.

5. U.S. companies importing merchandise from foreign countries must abide by all laws contained within Chapter 27 of the U.S. Criminal Code (Customs violations). The importer must file various documents, such as a U.S. Customs and Border Protection (CBP) Form 7501, describing the consignee, exporter, merchandise, applicable duty and country of origin. When merchandise contains timber products, the importer must also file a Plant and Plant Product

Declaration, which is described further below. Under 18 U.S.C. § 542, any company that makes a false statement on an import declaration, without reasonable cause to believe in the truth of that statement, is guilty of a felony violation.

6. The Lacey Act, 16 U.S.C. § 3371 *et seq.*, prohibits the importation of illegally-harvested timber into the U.S. This prohibition helps to ensure, amongst other things, that the U.S. timber industry is competing on a level playing field. It also lessens the role of the U.S. as a driver of illegal timber harvest globally, such as in the Amazon rainforest or, in this case, the habitat of the last remaining Siberian tigers in Far East Russia.

7. The Lacey Act requires importers of timber products to complete a Plant and Plant Product Declaration, commonly referred to as a "PPQ-505" or a "Lacey Act Declaration," and submit that declaration to the U.S. Department of Agriculture's Animal and Plant Health Inspection Service (USDA/APHIS). 16 U.S.C. § 3372(f)(1). This declaration requires a truthful description of the timber product imported, including the genus and species, the total amount of timber product, and the country from which the timber was harvested. The declaration is intended to promote the exercise of due care in sourcing by importers, as well as provide data used by regulatory and enforcement bodies to inform compliance efforts.

## Count One - Entry of Goods by Means of False Statements

From on or about February 1, 2013, to August 30, 2013, in the Eastern District of Virginia, the defendant,

LUMBER LIQUIDATORS, INC.,

acting through its subsidiaries, agents, assigns, and employees, who were acting within the scope of their agency and employment, and for the benefit of Lumber Liquidators, Inc., did enter and introduce into the commerce of the United States imported merchandise (to wit: 385.48 cubic meters of oak flooring procured through approximately 12 separate shipments from a supplier in China) by means of false and fraudulent declarations and papers and by means of written false statements (to wit: at least 12 USDA/APHIS PPQ-505 Declarations required by 16 U.S.C. § 3372(f)(1) that falsely declared that the oak was Mongolian oak harvested in Germany) without reasonable cause to believe the truth of those statements (to wit: an LL employee with Lacey Act responsibilities determined that Mongolian oak did not grow in Germany and had communicated his findings to relevant components of LL prior to the shipments).

All in violation of 18 U.S.C. § 542.

## Count Two - Transport of Illegally Imported Timber (Lacey Act)

From on or about October 1, 2011, to on or about January 30, 2012, in the Eastern District of Virginia, and elsewhere, the defendant,

LUMBER LIQUIDATORS, INC.,

acting through its subsidiaries, agents, assigns, and employees, who were acting within the scope of their agency and employment, and for the benefit of Lumber Liquidators, Inc., did (i) knowingly transport plants (to wit: 507.87 cubic meters of oak flooring procured through approximately 18 separate shipments from a supplier in China) from the defendant's warehouses in Toano, Virginia, and elsewhere to online customers and the defendant's retail stores in Virginia and other states, which had been transported from China to Norfolk, Virginia, in violation of U.S. law (to wit: falsely declared as being Mongolian oak (*Quercus mongolica*) harvested in Germany on PPQ-505 declarations required by 16 U.S.C. § 3372(f)(1) and (ii) in the exercise of due care, the defendant should have known that the PPQ-505 declarations were false.

All in violation of the Lacey Act, 16 U.S.C. §§ 3372(a)(1) and 3373(d)(2).

## Count Three - Transport of Illegally Imported Timber (Lacey Act)

From on or about May 29, 2013, to on or about July 14, 2013, in the Eastern District of Virginia, and elsewhere, the defendant,

### LUMBER LIQUIDATORS, INC.,

acting through its subsidiaries, agents, assigns, and employees, who were acting within the scope of their agency and employment, and for the benefit of Lumber Liquidators, Inc., did (i) knowingly transport plants (to wit: 1101.6 cubic meters of Mongolian oak (*Quercus mongolica*) flooring originating from Far East Russia and procured through approximately 34 separate shipments from a supplier in China) from the defendant's warehouses in Toano, Virginia, and elsewhere to online customers and the defendant's retail stores in Virginia and other states, which had been transported from China to Norfolk, Virginia, in violation of U.S. law (to wit: falsely declared as being Welsh oak (*Quercus petraea*) on PPQ-505 declarations required by 16 U.S.C. § 3372(f)(1)) and (ii) in the exercise of due care, the defendant should have known that the PPQ-505 declarations were false.

All in violation of the Lacey Act, 16 U.S.C. §§ 3372(a)(1) and 3373(d)(2).

## Count Four - Import of Illegally Harvested Timber (Lacey Act)

From on or about May 29, 2013, to on or about September 23, 2013, in the Eastern District of Virginia, and elsewhere, the defendant,

LUMBER LIQUIDATORS, INC.,

acting through its subsidiaries, agents, assigns, and employees, who were acting within the scope of their agency and employment, and for the benefit of Lumber Liquidators, Inc., (i) did knowingly import plants (to wit: 2,194.80 cubic meters of illegally-harvested Mongolian oak (*Quercus mongolica*) originating from Far East Russia and procured through approximately 68 separate shipments from a supplier in China) in foreign commerce, and (ii) in the exercise of due care, the defendant should have known that the Mongolian oak was taken in violation of a foreign law that regulated the taking of plants without and contrary to required authorization (to wit: the Forestry Agency of Khabarovsky Province, Russia, Forestry Declaration authorized the harvesting of only 373 cubic meters of oak for the year 2013, which Forestry Declaration was made available to and was part of the corporate records of the defendant. Order 18 of the Russian Federal Forestry Agency, and the Forest Management Plan of Khabarovsky Province, Russia (Order Nos. 26111 and 166P)).

All in violation of the Lacey Act, 16 U.S.C. §§ 3372(a)(2)(B)(IV), 3373(d)(2).

## Count Five - Transport of Illegally Imported Timber (Lacey Act)

From on or about July 1, 2013, to on or about September 10, 2013, in the Eastern District of Virginia, and elsewhere, the defendant,

## LUMBER LIQUIDATORS, INC.,

acting through its subsidiaries, agents, assigns, and employees, who were acting within the scope of their agency and employment, and for the benefit of Lumber Liquidators, Inc., did (i) knowingly transport plants (to wit: 238 cubic meters of merpauh (*Swintonia floribunda*) flooring originating from Myanmar and procured through approximately 6 separate shipments from a supplier in China) from the defendant's warehouses in Toano, Virginia, and elsewhere to online customers and the defendant's retail stores in Virginia and other states, which had been transported from China to Norfolk, Virginia, in violation of U.S. law (to wit: falsely declared as big-leaf mahogany (*Swietenia macrophylla*) from Indonesia on PPQ-505 declarations required by 16 U.S.C. § 3372(f)(1)) and (ii) in the exercise of due care, the defendant should have known that the PPQ-505 declarations were false.

All in violation of the Lacey Act, 16 U.S.C. §§ 3372(a)(1) and 3373(d)(2).

## Forfeiture Allegation

Upon conviction of the offense charged in Count One of this Information, a violation of 18 U.S.C. § 542, the defendant,

LUMBER LIQUIDATORS, INC.,

shall forfeit to the United States of America, pursuant to 18 U.S.C. §§ 981(a)(2)(A), 982(a)(2)(B), all property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the violation. The property to be forfeited includes, but is not limited to:

(a) 385.38 m$^3$ of Mongolian oak (*Quercus mongolica*) flooring that the defendant imported into the United States in twelve shipments between February 1, 2013, and August 30, 2013; and

(b) $969,175.00, which represents the proceeds derived from the illegal Mongolian oak flooring.

If any of the property described above, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to or deposited with a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been comingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p) and 28 U.S.C. 2461(c), including but not limited to the following,

(a) inventory located at facilitates owned, leased, or controlled by Defendant LL;

(b) cash, deposits, and securities held by or on behalf of Defendant LL in the United States and its territories.

All pursuant to 18 U.S.C. §§ 981(a)(2)(A), 982(a)(2)(B) and 28 U.S.C. § 2461(c).

Respectfully submitted,

JOHN C. CRUDEN
ASSISTANT ATTORNEY GENERAL
ENVIRONMENT AND NATURAL RESOURCES
DIVISION

By: _____
Patrick M. Duggan, Trial Attorney
Christopher L. Hale, Trial Attorney
Environmental Crimes Section
U.S. Department of Justice
601 D Street NW, Suite 2300
Washington, DC 20004
Office: 202-305-0321
Fax: 202-514-8865
Email: patrick.duggan@usdoj.gov
       christopher.hale@usdoj.gov

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____
Stephen W. Haynie
Assistant United States Attorney
Virginia State Bar No. 30721
U.S. Attorney's Office
101 W. Main Street, Ste. 8000
Norfolk, Virginia 23510
Office: 757-441-6331
Fax: 757-441-3205
Email: steve.haynie@usdoj.gov